# EXHIBIT B

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMADOR DE JESUS,
*on behalf of himself, FLSA Collective Plaintiffs and the Class,*

                Plaintiff,

                v.

GREGORYS COFFEE MANAGEMENT, LLC,
and GREGORY ZAMFOTIS,

                Defendants.

Case No.: 20-cv-06305

---

## DECLARATION OF AMADOR DE JESUS

I, AMADOR DE JESUS under penalty of perjury, affirm as follows:

1. I was hired by Defendant GREGORYS COFFEE MANAGEMENT, LLC from in or around June 2014 to work as a cook and baker at Defendants' Gregory's Coffee Warehouse. I worked at "Gregory's Coffee Management" located at 1149 50th Ave., Long Island City, NY 11101. My employment was terminated on or around March 17, 2020.

2. At all times I was an employee of GREGORYS COFFEE MANAGEMENT, LLC (the "Corporate Defendant").

3. Throughout my employment with Defendants, I regularly spoke with my fellow non-managerial coworkers regarding our wages. Such co-workers include, but are not limited to:

| Name | Position |
|---|---|
| Saul Garcia | Baker |
| Santiago [LNU] | Salad Prep |
| Ricardo [LNU] | Salad Prep |

1

| Rufino [LNU] | Baker |
| --- | --- |
| Max 1 [LNU] | Dishwasher |
| Alberto Vasquez | Manager |

Based on my work experience and my personal observations and conversations with co-workers, I know that all employees of Defendants were subject to the same wage and hour policies. I regularly spoke with my co-workers at work, and in the locker rooms while getting ready for work, and it was common knowledge that Defendants engaged in the practices described below.

4. From the beginning of my employment with Defendants until in or about January 2017, I worked six (6) days per week, from 6:00 AM to 4:00 PM for a total of sixty (60) hours per week. From in or about January 2017 until the end of my employment with Defendants, I regularly worked six (6) days per week, from 6:00 AM to 3:00 PM for a total of fifty-four (54) hours per week. Based on my personal observations and conversations, other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 3 herein) also worked the same or similar hours.

5. From the beginning of my employment with Defendants until in or about January 2017, I was paid on a fixed salary basis of five hundred fifty dollars ($550) per week regardless of actual hours worked. During the time I was paid on a fixed salary, I was required to work sixty (60) hours per week. There was no agreement that my fixed salary covered overtime hours. Similarly other employees also were fixed salaried and not paid for their overtime hours.

6. From in or about January 2017 until in or about January 2020, I was paid fifteen dollars ($15) per hour. From in or about January 2020 until the end of my employment with Defendants, I was paid fifteen dollars and fifty cents ($15.50) per hour.

7. From in or about January 2017 until in or around January 2020, when I was paid hourly with Defendants, I was not paid for all hours worked, including overtime, due to Defendants' policy of time shaving. I would regularly be required to clock out at the end of my shift but was then required to continuing working on average for thirty (30) minutes of off-the-clock work. I was also subject to a meal break deduction, which I did not take. Based on my personal observations and conversations with co-workers, other hourly employees (including, but not limited to, individuals listed in ¶ 3 herein) were similarly not paid overtime and time shaved for off-the-clock hours and meal breaks that they did not take.

8. Prior to 2017, I discussed Defendants' illegal fixed salary policy and their refusal to pay overtime during our employment with other employees. I particularly with Saul Garcia and Rufino [LNU] while working, and in the locker rooms while getting ready for work. Saul Garcia and Rufino [LNU] would complain about having to stay past their scheduled shift and not getting any extra pay for it. Every week, the manager Max 2 [LNU], would distribute envelopes with cash in them to employees. My co-workers and I would open the envelopes and see that it would be the same amount of money regardless of whether we worked thirty (30) minutes or one (1) hour past our scheduled shifts every day. Saul Garcia would complain to me about this and said, "This is so unfair. The boss wants us to stay until the job is complete but will not pay us. In order to complete our job, we must stay about an hour past our shift."

9. After 2017 when I was paid on an hourly basis, I discussed Defendants' illegal time shaving policies with other employees, particularly with Saul Garcia and Rufino [LNU] while working, and in the locker rooms while getting ready for work. Saul Garcia and Rufino [LNU] would complain about time shaving when Defendants began to pay hourly them rates. My co-workers and I would stay thirty (30) minutes to one (1) hour past our scheduled shifts without pay.

3

One day, I asked Saul Garcia to complain to the owner about our missing hours, and when Saul Garcia did, the owner told Saul Garcia, "you must finish your work first no matter what, it doesn't matter how long it takes. These conversations would usually take place on Tuesdays, the usual pay date. Saul Garcia and Rufino [LNU] also complained about the clock in/out system. My co-workers and I would clock in and out as instructed, but Saul Garcia said, "I don't know why they make us clock in and out. they never pay us for the time on our timesheet anyway. If I work 9.5 hours today, but they only paid me for 8. The worst part is that these are supposed to be OT hours where I'm supposed to make more than usual but they just erase those hours from my check."

10. Throughout my employment with Defendants, I worked shifts exceeding ten (10) hours in duration, however, Defendants failed to provide me with my spread of hours premium for those shifts. Based on my personal observations and conversations with co-workers, other employees (including, but not limited to, individuals listed in ¶ 3 herein) were similarly not paid spread of hours premium when working shifts exceeding ten (10) hours in duration.

11. When I was hired by Defendants, I did not receive a wage and hour notice as required under New York Labor Law. Based on my personal observations and conversations, no other employee (including, but not limited to, individuals listed in ¶ 3 herein) ever received a written wage and hour notice at the time of hiring or thereafter, informing them of their rates of pay or other requirements under the New York Labor Law.

12. During my employment with Defendants, I received wage statements from Defendants, but they failed to state the correct number of hours that I worked each week. Based on my personal observations and conversations with my co-workers, other employees (including, but not limited to, individuals listed in ¶ 3 herein) received similar improper proper wage statements.

13. I agree to act as a class representative and am of sound mind and body.

14. I do not have any conflicts with prospective class members.

15. Esta declaración ha sido traducida para mi en español y es verdadera y correcta a mi leal saber y entender.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: 6/9/2021 _____

DocuSigned by:

_____
2B0308D8E6FF45E...

Amador De Jesus