**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AMADOR DE JESUS,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

       Plaintiff,

    v.

GREGORYS COFFEE MANAGEMENT, LLC,
and GREGORY ZAMFOTIS,

       Defendants.

---

**Case No.:** 20-cv-06305

### MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR ATTORNEYS' FEES

Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................................... 1

II.   ARGUMENT ......................................................................................................................... 2

  A.  Plaintiff's Opposition to Defendants' Motion to Compel and Dismiss ............................ 3

    a.  Defendants Waived the Right to Arbitrate ..................................................................... 3

      1.  The first factor – time elapsed from when litigation was commenced until the request for arbitration –  favors waiver. ........................................................................................... 4

      2.  The second factor - the amount of litigation to date, including motion practice and discovery - favors waiver. .......................................................................................................... 5

      3.  The third factor -- prejudice to Plaintiff -- favors waiver. ....................................... 5

    b.  The Agreement is Unconscionable and Must be Revoked ............................................ 8

      1.  The Agreements must be waived as a violation of protections owed to potential class members ............................................................................................................................... 8

      2.  The Agreements are Void as Defendants Misrepresented the Agreement to Plaintiff ............................................................................................................................... 11

      3.  The Agreements are Prospective .......................................................................... 11

    c.  Defendants' Unclean Hands Mandates Denial of Arbitration ....................................... 12

  B.  Plaintiff's Cross Motion for Fees .................................................................................. 14

    a.  Rule 11 Sanctions ...................................................................................................... 15

    b.  Inherent Powers of the Court to Sanction .................................................................. 16

## EXHIBITS

**EXHIBIT A – Proof of NYS Dept of Labor Investigation**

**EXHIBIT B – Arbitration Agreements and Wage Notices**

**EXHIBIT C – True and Accurate Billing Records of Time Spent Related to this Matter**

**EXHIBIT D – List of Class Action Litigations in the Eastern and Southern District of New York and New York Supreme Court in which Counsel Has Been Appointed Class Counsel**

# TABLE OF AUTHORITIES

## Cases

*Addison v. Huron Stevedoring Corp.*, 96 F. Supp. 142 (S.D.N.Y. 1950) ...................................... 8

*Alfaro v Vardaris Tech, Inc.*, 69 AD3d 436, 893 N.Y.S.2d 17 (1st Dept 2010) ........................... 11

*Amarant ex rel. Mercury Beach-Maid v. D'Antonio*, 602 N.Y.S.2d 837, 838 (N.Y. App. Div.1993) ................................................................................................................................. 15

*Bein v. Heath*, 47 U.S. 228 (1848) ............................................................................................. 14

*Carnegie v H&R Block, Inc.*, 180 Misc 2d 67, 70-72, 687 N.Y.S.2d 528 (Sup. Ct., New York County 1999) ........................................................................................................................ 10

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ................... 17

*Cline v. Berg*, 273 Va. 142, 639 S.E.2d 231 (Va. 2007) .............................................................. 15

*Commercial Lubricants LLC v. Safety-Kleen Sys.*, 2018 U.S. Dist. LEXIS 178649 (E.D.N.Y. Oct. 17, 2018) ........................................................................................................................ 5

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ............................................................ 19

*Doe v. Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020) .................................................. 5, 7

*Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986) ...................................... 21

*Eastway Constr. Corp. v. New York*, 762 F.2d 243 (2d Cir. 1985) ..................................... 17, 19

*F. D. Rich Co. v. United States ex rel Indus. Lumber Co.*, 417 U.S. 116, 94 S. Ct. 2157, 40 L. Ed. 2d 703 (1974) ........................................................................................................................ 21

*Griffin v. Aldi, Inc.*, 2017 U.S. Dist. LEXIS 71840, 2017 WL 1957021 (N.D.N.Y. 2017) .......... 11

*Hinds County v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125 (S.D.N.Y. 2011) ....................... 2, 10

*In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465 (S.D.N.Y. 2013) .................................... 15

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............. 10

*Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2d Cir. 2012) ........................ 19

*Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92 (S.D.N.Y. 2017) ............................................. 6

*Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) ........................... 2, 10, 11

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156 (2d Cir. 2010) ....................................................................................................................... 4, 6, 8

*Leadertex Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) ................. 5

*LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568 (2d Cir. 2015) ........................................ 8

*Maines Paper & Food Service Inc. v. Adel*, 256 A.D.2d 760, 681 N.Y.S.2d 390, (N.Y. App. Div. 1998) ...................................................................................................................................... 13

*Mason Tenders Dist. Council of Greater N.Y. v. Gilbane Bldg. Co.*, 2018 U.S. Dist. LEXIS 162337 (S.D.N.Y. Sep. 19, 2018) ............................................................................................. 6

*Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846, 2018 U.S. Dist. LEXIS 169653 (S.D.N.Y. Sep. 30, 2018) ........................................................................................... 8

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145 (2d Cir. 2014) .............. 3

*Nemeroff v. Abelson*, 704 F.2d 652 (2d Cir. 1983) .................................................................... 21

*Nicole Griffin v. Gregorys Coffee Management LLC et al*, Index No. 153397 (Sub. Ct. New York County 2018) .............................................................................................................. 1, 10, 12

*Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) ....................................... 3

*PenneCom B.V. v. Merrill Lynch*, 372 F.3d 488 (2d Cir. 2004) ................................................. 14

*Pimpinello v. Swift & Co.*, 253 N.Y. 159, 170 N.E. 530 (1930) ................................................ 13

*Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15 Civ. 2473, 2019 U.S. Dist. LEXIS 148632, 2019 WL 4126464 (S.D.N.Y Aug. 30, 2019) ............................................................ 4, 6

*PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2d Cir. 1997) ........................... 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) ................................................................................................................ 3

*Quiridumbay v. GDK Food Enterprises LLC et al*, Case No. 16-cv-06910 (E.D.N.Y. 2016) .. 1, 9, 12

*Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99-CV-4567, 2001 U.S. Dist. LEXIS 13893, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ........................................................................ 11

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ........................................................................................................................................ 3

*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000) ................................................ 17

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) ......................... 21

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) ............................................... 3

*Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F. Supp. 657 (S.D.N.Y. 1984) ............... 22

*Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. 2020) 13

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ............................................................... 21

*Weinstein v Jenny Craig Operations, Inc.*, 2014 N.Y. Misc. LEXIS 6067 (Sup. Ct., New York County 2014) .............................................................................................................................. 10

**Rules**

Fed. R. Civ. Proc. 11(b) ............................................................................................................ 15

Fed. R. Civ. Proc. 11(c) ............................................................................................................ 15

## I.   <u>PRELIMINARY STATEMENT</u>

Defendants' silence has meaning.  Plaintiff's action against Defendants was initiated last year, on December 29, 2020.  Defendants only produced the disputed arbitration agreement after the exchange of significant discovery, Court Ordered settlement talks, and the full briefing of Plaintiff's Motion for Conditional Certification.  Regarding a good faith explanation for this delay, Defendants remain silent.

Defendants, after choosing to forego the execution of parties' arbitration agreements (the "Agreements."), may not now attempt to compel enforcement of these same Agreements. Defendants' mere change in litigation strategy is not enough to reinstate a waived contract.  This is especially true where, as here, Defendants benefited from the procedural mechanisms associated with Federal Court.  Now after the Eastern District of New York's mandatory mediation program failed to institute an early resolution to this matter, Defendants have reevaluated the cost-benefits of enforcing the Agreements.  Defendants waived the Agreements, and Defendants' may not now, after nine-months of litigation, settlement talks, and motion practice, demand the Court to enforce their change of mind.

Defendants fail to disclose that the arbitration agreements were instituted in response to ongoing prior class actions and investigations.  Plaintiff began working for Defendants in January of 2014.  By 2017, Defendants faced both a class case and a New York State Department of Labor enforcement actions regarding Defendants' pay practices at the warehouse where Plaintiff worked. *See Quiridumbay v. GDK Food Enterprises LLC et al*, Case No. 16-cv-06910 (E.D.N.Y. 2016); **Exhibit A**; *see also Nicole Griffin v. Gregorys Coffee Management LLC et al*, Index No. 153397 (Sub. Ct. New York County 2018).  In January of 2018, Defendants demanded Plaintiff sign an arbitration agreement. The Agreements, which were instituted within the context of class suits and

investigations against Defendants, were an improper and impermissible attempt to preclude putative class members from taking part in a class.  Both Federal and State Courts in New York routinely strike down as coercive and unconscionable arbitration agreements made without properly ensuring that prospective class members received **accurate**, **impartial** information regarding the status and effects of any class cases. *Hinds County v. Wachovia Bank N.A.,* 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011); *citing Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)

Further, Defendants comes before the Court with clearly sullied hands.  Plaintiff is not an English speaker and has no knowledge of signing any agreement with defendants beyond, some "documents," which Defendants told Plaintiff to sign to continue working. *See* Plaintiff's Decl. dated September 22, 2021. As Plaintiff did not draft, demand, institute or even have the capacity to read these arbitration agreements, his lack of knowledge thereof is not just understandable, it is expected.  Defendants, on the other hand, did all those things.  Moreover, common sense dictates that Defendants have instituted this agreement for dozens of others who worked at the same location.  In fact, Defendant Zamfotis appears to distribute and personally sign these agreements on a yearly basis. *See* **Exhibit B**.  Defendant with full knowledge of this agreement since the commencement of the litigation does not even attempt to offer a good faith excuse for their failure to enforce or produce it.  As Defendants do not even attempt to argue they acted in good faith with respect to these agreements, the Court must not now reward their bad conduct by granting their motion.

## II.   **ARGUMENT**

Arbitration agreements are contracts, "on equal footing with other contracts," so courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63,

67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (internal citation omitted).  Indeed, the purpose of the FAA was "to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (emphasis in original); *quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Since arbitration agreements are considered contracts, *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014), whether the parties entered into a binding arbitration agreements is governed by state contract law principles. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002).

In this matter, Defendants' motion to dismiss this action and compel arbitration must fail for the following three reasons:

    i.   Defendants' prosecution of this action establishes their waiver of enforcement of the Agreements;

    ii.   Defendants' violation of protections afforded to putative class members and violation basic contractual principles both require the Court to strike the Agreements; and

    iii.   Defendants' bad faith in their performance of the Agreement bars their demands to bind Plaintiff to the same Agreements.

If despite the above violations the Court still compels Arbitration, Plaintiff must be granted his reasonable attorney's fees for having prosecuted a case on a collective and class wide basis since the end of last year.

A. Plaintiff's Opposition to Defendants' Motion to Compel and Dismiss

a. Defendants Waived the Right to Arbitrate

Defendants waived any contractual right to arbitrate. Courts in this circuit consider three factors when determining whether a party has waived its right to arbitrate: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium &*

*Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation and quotation marks omitted); *accord Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15 Civ. 2473, 2019 U.S. Dist. LEXIS 148632, 2019 WL 4126464, at *7 (S.D.N.Y Aug. 30, 2019).

Here, all three factors dictate a waiver of the right to arbitrate occurred in this case. *La. Stadium & Exposition Dist.*, 626 F.3d at 159 (application of these factors is "specific [to the] context of each particular case" and lacks a "rigid formula or bright-line rule.").

> 1. *The first factor – time elapsed from when litigation was commenced until the request for arbitration – favors waiver.*

Plaintiffs filed the Complaint last year on December 29, 2020. *See* Plaintiff's Complaint [ECF 1].   Defendants did not request to arbitrate the claims until August 10, 2021, over eight months after the litigation began. *See* Defendants' Letter to the Court [ECF25].

Court in this Circuit find delays of less than even six months to warrant a finding of waiver. *See PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding waiver in part because "approximately five months passed between the time defendants asserted arbitrable claims and [the plaintiff] filed its petition to compel"); *see also  Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 638-639 (S.D.N.Y. 2020) (finding waiver in part because "Defendants did not request to arbitrate the claims until…over eight months after the litigation began."); *Leadertex Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver in part because the defendant "could have invoked the arbitration clause at the outset of the litigation" but instead "allowed seven months…to elapse before seeking to enforce the contractual arbitration clause."); *Commercial Lubricants LLC v. Safety-Kleen Sys.*, 2018 U.S. Dist. LEXIS 178649 at *7 (E.D.N.Y. Oct. 17, 2018) (finding waiver in part because "Defendant waited seven months…to raise arbitration issue").

Here, eight months has elapsed since Plaintiff's filing of the action, which under the second circuit is more than enough to favor waiver under the first prong.

> 2. *The second factor - the amount of litigation to date, including motion practice and discovery - favors waiver.*

"The Second Circuit has generally found that a party waves its right to arbitrate when it engaged in protracted litigation, such as extensive pre-trial discovery and substantive motions over the course of several months before seeking arbitration." *Policy Admin. Sols., Inc.*, 2019 U.S. Dist. LEXIS 148632 at *8 *quoting Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 101 (S.D.N.Y. 2017).

Here, as of the date of this letter parties have (1) exchanged considerable discovery, (2) engaged in Court Ordered settlement negotiations, and (3) fully briefed a motion for collective certification. *See* Court's Mediation Referral Order [ECF 9]; Declaration of C.K. Lee dated September 27, 2021; Briefed Collective Motion [ECF 20-24]. In fact, under the parties' mandated settlement discussions, parties were to obtain and exchanged all relevant employment documents for this matter. Additionally, parties have undergone expensive time-consuming motion practice, which includes the fully briefed motion for conditional certification currently before the Court.

As parties, have undergone considerable litigation, the second factor clearly demands waiver.

> 3. *The third factor -- prejudice to Plaintiff -- favors waiver.*

"[The Second Circuit has] recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." *Mason Tenders Dist. Council of Greater N.Y. v. Gilbane Bldg. Co.*, 2018 U.S. Dist. LEXIS 162337 at *20 (S.D.N.Y. Sep. 19, 2018) *quoting La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Both substantive and procedural prejudice exist in this case.

5

Based on Defendants' motion papers, Defendants intend to limit any adjudication of this action to only Plaintiff's individual claims, with no mechanism for class or collective certification. *See* Def. Motion to Compel dated September 17, 2021 at p.1 ("This Court should…dismiss[] this action so De Jesus can submit his individual claims to binding arbitration.").

Class Members will be substantively prejudiced by a dismissal.  Class Members afraid to speak out who currently believe their claims are being adjudicated through this suit will have delayed bringing their own claims.  Due to Defendants' tactical year long delay, these Class Members may now have their rights and claims wholly extinguished.

As the Court is aware from Plaintiff's Motion for Conditional Certification, Plaintiff has spoken to multiple employees complaining of Defendants violations. *See* Plaintiff's Decl. at ¶3, 8-9 [ECF 21-2]. These individuals have in turn spoken with many others.  Had these individuals known that Plaintiff was unable to adjudicate their claims, they may well have stepped forward and brought their own claims.

Moreover, Defendants' eight-month delay may only be the result of bad faith or reckless negligence.  If the Court endorses this this bad-faith with a dismissal, the Court will see arbitration agreements in Class Actions appearing later and later into discovery with the hopes of extinguishing more and more of potential class members claims.  Egregiously, Defendants do not bother attempting to provide a good-faith reason for their delay. The Defendants' silence must be taken as admission of bad faith.

Additionally, Plaintiff himself will also suffer substantive prejudice.  Substantive prejudice may be demonstrated "'when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration.'" *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 638-639 (S.D.N.Y. 2020); *see also Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846,

2018 U.S. Dist. LEXIS 169653 (S.D.N.Y. Sep. 30, 2018). Such prejudice also exists if the defendant seeks to benefit from information obtained through judicial proceedings that would be unavailable in arbitration. *See LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569-70 (2d Cir. 2015) "A litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court." *La. Stadium & Exposition Dist.*, 626 F.3d at 161.

Defendants' make their motion for arbitration only after reviewing Plaintiff's fully briefed motion for conditional certification and after receiving discovery material not available through the ordinary mechanisms of arbitration.  Now, after receiving Plaintiff's motion for conditional certification, Defendants re-evaluated the likelihood of success of Plaintiff's motion, and now seek a change of forum.  Moreover, Defendants' obtained discovery not required in an arbitration. Specifically, Plaintiff's sworn statement as to his claims.  An affidavit as to the claims in this action with which to cross-examine Plaintiff is a material and significant source of discovery.  Further, in arbitrations, party depositions of FLSA and NYLL claims only occur at the discretion of the arbitrator.  In this context, Plaintiff's such sworn statement is even more significant.

In addition to the above substantive prejudice, there has also been procedural prejudice against Plaintiff.

"A dollar a week is not a trivial matter to a workingman." *Addison v. Huron Stevedoring Corp.*, 96 F. Supp. 142, 181 (S.D.N.Y. 1950).  As the Court is aware, Plaintiff is a minimum wage worker – a workingman.   Defendants' delay has instigated undue expense litigating as a class what Defendants now seek to limit to an individual matter.[1]

---

[1] Defendants have proposed a bizarre notion not found in case law or common sense, that even if the right to enforce the Agreements as a whole is waived or found to be unenforceable that the Agreements class waiver should be preserved.  Such a notion defies logic and is completely unsupported by any case.  Even the cases Defendants cite in support presuppose the arbitration agreements validity.

Defendants attempt to dismiss the case will only result in even further delay in prosecution and resolution of this matter depriving Plaintiff and Class Members of their rightful compensation and allowing Defendants to incur yet another violation against these vulnerable workers.

### b. THE AGREEMENT IS UNCONSCIONABLE AND MUST BE REVOKED

Black letter New York law demands that the Agreements be revoked as unconscionable and coercive as they were made in violation of the protections afforded to putative class members. Additionally, Plaintiff is a Spanish speaker, these Agreements were only provided to him in English, and were misrepresented to him as being "documents he needed to sign to continue working." Given this misrepresentation, a reasonable understanding of these documents would be liability waivers, tax-sheets, and other employment documents. *See* Plaintiff Decl. dated September 22, 2021.  If the Court does not strike the arbitration agreements, then they must only be enforced prospectively, as Defendants drafted the Agreements with prospective language.

### 1. The Agreements must be waived as a violation of protections owed to potential class members

The current case is not Defendants' first class and collective case.  Over the past five (5) years, Defendants have been intermittently sued on a class-wide basis by former employees, and/or investigated for class violations by the New York Department of Labor.  *See e.g., Quiridumbay v. GDK Food Enterprises LLC et al*, Case No. 16-cv-06910 (E.D.N.Y. 2016); *Nicole Griffin v. Gregorys Coffee Management LLC et al*, Index No. 153397 (Sub. Ct. New York County 2018); *See* **Exhibit A**, New York State Department of Labor Reimbursement to Prospective Class Member.

Federal and State Court's both consistently find arbitration agreements to be unenforceable and coercive when Defendants' institute arbitration agreements on potential class members without ensuring "that potential class members receive accurate and impartial information

8

regarding the status, purposes and effects of the class action." *Hinds County v. Wachovia Bank N.A.,* 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011); *citing Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985); s*ee e.g., In re Currency Conversion Fee Antitrust Litig*., 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (the court held that arbitration clauses were unenforceable because "defendants' unsupervised communications . . . sought to eliminate putative class members' rights in this litigation.")..

In fact, it is black letter law in New York, that arbitration agreements signed by current employees after class litigation is commenced are deemed unconscionable and thus unenforceable. *Weinstein v Jenny Craig Operations, Inc.*, 2014 N.Y. Misc. LEXIS 6067 (Sup. Ct., New York County 2014); *see also In re Currency Conversion Fee Antitrust Litigation*, 361 F Supp 2d 237, 253 (S.D.N.Y. 2005); *Carnegie v H&R Block, Inc.*, 180 Misc 2d 67, 70-72, 687 N.Y.S.2d 528 (Sup. Ct., New York County 1999) (after litigation is commenced, a defendant may not have "coercive" or "misleading" communications with potential class members or "attempt to affect" their decision to participate in the class"); *Alfaro v Vardaris Tech, Inc.*, 69 AD3d 436, 893 N.Y.S.2d 17 (1st Dept 2010) ("the inescapable inference that defendant[] drafted the [agreements and had] ... potential class members [sign them] for the purpose of ... exclud[ing] them[] from the class[.]).

Here, Defendants were aware of court cases and DOL investigations advancing class claims against them. Defendants, with knowledge of the status of those claims, improperly coerced employees to give up their rights under the law without Court mandated notification of rights. Coercion is especially more likely, in situations as we have here, where "the class and the class opponent are involved in an ongoing business relationship, such as an employer-employee relationship. *Griffin v. Aldi, Inc.*, 2017 U.S. Dist. LEXIS 71840, *10-11, 2017 WL 1957021

(N.D.N.Y. 2017); *citing Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99-CV-4567, 2001 U.S. Dist. LEXIS 13893, 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001) (*quoting Kleiner*, 751 F.2d at 1202).

The present case has two potential arbitration agreements, both of which must be revoked as unconscionable under the protections afforded to potential class members.  When Plaintiff signed the Agreements in 2018 and 2019, Defendants' policies and practices of payment at the warehouse in which Plaintiff worked were being investigated by the Department of Labor. *See* **Exhibit B** at p. 2, 4.  This investigation led to some employees receiving back wages in mid-2019. *See* **Exhibit A** .  In addition to action being taken by the New York State Department of Labor, Defendants were once again being sued on a class-wide basis for New York Labor Law violations in 2019.  *See Nicole Griffin v. Gregorys Coffee Management LLC et al*, Index No. 153397 (Sub. Ct. New York County 2018).   Finally, Defendants failed to update potential class members on the status of a class case, for which collective notice had been distributed.  In or around July of 2017, notice of a pending class action was sent to workers at the warehouse where Plaintiff worked. *See Quiridumbay v. GDK Food Enterprises LLC et al*, Case No. 16-cv-06910 (E.D.N.Y. 2016).  On December 20, 2017, within a month of the *Quiridumbay* matter settling on an individual basis, Plaintiff signed an arbitration agreement.

Defendants forced current employees to sign arbitration agreements while class cases were being advanced in Court and before the Department of Labor, without providing notice to employees on the status of a pending matters.

Due to the clear violation of the rights and protections afforded to putative class members, the Agreements in this matter must be revoked.

10

2.   *The Agreements are Void as Defendants Misrepresented the Agreement to Plaintiff*

Plaintiff is not an English speaker, and he certainly is incapable of reading and understanding any legal document written in English. *See* Plaintiff's Decl. at ¶2-4 dated September 22, 2021. Defendants provided this document to him, knowing that he was incapable of understanding it, and told him they were "documents" he needed to sign. *See* id.

Typically, "[a]n inability to understand the English language, without more, is insufficient" to void a contract. *Maines Paper & Food Service Inc. v. Adel*, 256 A.D.2d 760, 681 N.Y.S.2d 390, (N.Y. App. Div. 1998). However, "If the signer is illiterate, or blind, or ignorant of the alien language of the writing, *and the contents thereof are misread or misrepresented to him by the other party*, or even by a stranger, unless the signer be negligent, the writing is void." *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 U.S. Dist. LEXIS 61421, *28 (S.D.N.Y. 2020); *quoting Pimpinello v. Swift & Co.*, 253 N.Y. 159, 163, 170 N.E. 530 (1930) (emphasis added).

Given the representation provided by Defendants, a belief that the documents were liability waivers, tax forms, and wage notices was understandable.  This is especially true, as Defendants intermingled the arbitration agreements with Plaintiff's wage notice. *See* **Exhibit B**, Plaintiff's Wage Notices at p. 1, 3.

As Defendants misrepresented the contents of the contract, which was only provided in English, to an individual who did not speak English, the agreement must be revoked.

3.   *The Agreements are Prospective*

If the Court does not strike the arbitration agreements, then they must only be enforced prospectively, as Defendants drafted the Agreements with prospective language.

Given the above context of class-litigation, a review of the Agreements carefully constructed language reveals a manifest intent that such Agreements would be prospective only. The Agreements plain language is clearly drafted prospectively as an attempt to provide argument

against allegations of improper coercive, misleading communications affecting potential class members right to participate in a class action. Here, the Agreements' language states, "You agree as a condition and in consideration for new or continued for new or continued employment that any dispute or claim that **arises out of** or relates to your employment, or that **arises out of** or is based on any employment relationship…shall be resolved by arbitration[.]" (emphasis added). *See* **Exhibit B** at p. 2, 4.

As the language is prospective and the context of its enactment mandated protection against Plaintiff's right to participate in a class action, if the court does not find the contract was waived or unconscionable, the Court must rule that it only addresses prospective claims

### c. DEFENDANTS' UNCLEAN HANDS MANDATES DENIAL OF ARBITRATION

Fatal to Defendants' attempt to compel arbitration is their silence regarding the cause of their delay for moving to arbitrate.

"The equitable powers of this court can never be exerted [o]n behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage." *Bein v. Heath*, 47 U.S. 228, 247 (1848). And "New York courts have long applied the maxim that one 'who comes to equity must come with clean hands.'" *PenneCom B.V. v. Merrill Lynch*, 372 F.3d 488 (2d Cir. 2004) (*quoting Amarant ex rel. Mercury Beach-Maid v. D'Antonio*, 602 N.Y.S.2d 837, 838 (N.Y. App. Div.1993)). The doctrine of unclean hands requires that "the complainant seeking equitable relief must not himself have been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *In re A2p SMS Antitrust Litig*., 972 F. Supp. 2d 465, 480-481 (S.D.N.Y. 2013) (*quoting Cline v. Berg*, 273 Va. 142, 639 S.E.2d 231 (Va. 2007)).

Defendants' hands have been amply sullied for many months now. Defendants have known about the Agreements since the start of the lawsuit. Plaintiff was never provided a copy of

the Agreement, and does not speak English, so had no knowledge of this Agreement.  Defendants, who drafted, produced, and presumably distributed this agreement to all employees at Plaintiff's location on a yearly basis, can proffer no argument of good faith for this late production. Defendants utilized the Eastern District of New York's mandatory mediation protocol to force settlement talks, an exchange of discovery, and an affidavit from Plaintiff.  Only once Defendants' attempts to settle this matter on an individual basis failed, did Defendants' produce the Agreements, and decide that paying for Arbitration was to their benefit.

Defendants' basic principle is "rules for thee but not for me," for their conduct betrays their belief that they may selectively exempt themselves from the terms of their agreements with employees and former employees to the precise extent that it suits their interest.  Defendants have taken advantage of Plaintiff's lack of English and lack of knowledge of his own rights, to play gamesmanship with the Court system.  Defendants do not even attempt to provide a good faith basis for delaying their motion to compel.  Clearly, this failure is because Defendants do not have a good faith basis for the delay.

Further, Defendants' unclean hands are demonstrated by the improper communications and attempt to have Plaintiff and other employees give up protected rights in violation of both law and basic contractual principles.

As Defendants' fail to proffer any good faith reason for the delay, have improperly coerced employees into signing agreements without proper knowledge and in violation of Court mandated protections, and played gamesmanship with the judicial system, the Court must find that Defendants appeared to the Court with sullied hands and deny Defendants' motion.

B.  P<small>LAINTIFF'S</small> C<small>ROSS</small> M<small>OTION FOR</small> F<small>EES</small>

Defendants were aware of this arbitration agreement and still forced Plaintiff to expend considerable resources in prosecuting this action.  Defendants make no excuse and provide no reason for their delayed production of this agreement.  Defendants now claim that all actions taken before the court were immaterial as parties should have been before an arbitrator since last year. As Defendants bad faith conduct have resulted in these supposed wasteful expenditures of time and resources, Defendants' must be made to cover the costs.

Although the "American Rule" against fee shifting generally does not allow a party to recover attorneys' fees, federal courts have allowed such awards in limited circumstances.  Such circumstances include the following: (1) a violation of Federal Rule of Civil Procedure 11 obligation to investigate fact and law before filing papers, and (2) through the Court's inherent equitable power to sanction.  *See Eastway Constr. Corp. v. New York*, 762 F.2d 243 (2d Cir. 1985); s*ee also Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) ("The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") *quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

In this case, as discussed above, Defendants' actions or inactions, were so completely without merit that Defendants conduct must have been motivated by bad faith and undertaken for some improper purpose, such as delay.

####    a. RULE 11 SANCTIONS

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Rule 11 accomplishes this objective by authorizing courts to impose sanctions "…when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. Proc. 11(b)—(c)).

Moreover, sanctions under Rule 11 may be imposed even without a showing of bad faith. *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 253 (2d. Cir. 1985).

Here, Defendants' Motion to Compel is an acknowledgement that Defendants did not conduct appropriate inquiry into the facts surrounding Plaintiff's claim before interposing an Answer and Opposition to Plaintiff's Motion for Conditional Certification.  In fact, Defendant's Answer, which fails to even admit that Plaintiff was Defendants' employee, reveals that no inquiry into Plaintiff's claims were made. *See* Defendants' Answer at ¶23(a-e) [ECF 14].  Given that Defendant ZAMFOTIS himself oversees the signing of the arbitration agreements on a yearly basis, and that Defendant ZAMFOTIS countersigns all such agreements for dozens of employees, either no inquiry was made into Plaintiff's claims at the commencement of this lawsuit, or Defendants withheld the information in bad faith.

Under Rule 11, whether negligence or malice, both scenarios warrant the imposition of sanctions.  Sanctions are especially in this matter where Plaintiff's considerable time in prosecuting this action may have been avoided had Defendants conducted even a cursory review of the claims as mandated by law.

b. INHERENT POWERS OF THE COURT TO SANCTION

Another such recognized exception to the American Rule is commonly known as the bad-faith exception. This exception exists when an opponent "has commenced or conducted an action 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (quoting *F. D. Rich Co. v. United States ex rel Indus. Lumber Co.*, 417 U.S. 116, 129, 94 S. Ct. 2157, 40 L. Ed. 2d 703 (1974) (footnote omitted)). The bad-faith exception extends to "continuation" of a suit. *See Nemeroff v. Abelson*, 704 F.2d 652, 660 (2d Cir. 1983) (holding that "bad faith" can be found in the "continuation" of the suit).

For a court to award attorneys' fees pursuant to bad-faith conduct under its inherent power requires both "'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes.'" *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982) (*quoting Nemeroff*, 620 F.2d at 348); *see Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) ("In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was asserted in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay."). Further, "[t]he assessment of fees for bad faith conduct, when exercised under the court's equitable power, may be imposed upon the errant litigant and his lawyer." *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F. Supp. 657, 661 (S.D.N.Y. 1984).

According to Defendants' all actions in this matter have been entirely without color. Such actions include the following: Defendants' Answer, parties discussions regarding potential class or collective liability, Plaintiff's Motion for Conditional Certification, Defendants' Opposition, Plaintiff's Reply. If the Court compels arbitration, all such actions will be rendered meaningless

16

and frivolous.  The only question as to Plaintiff's entitlement to attorneys' fees will be whether such actions were conducted in bad faith.  Defendants' silence clearly voices their culpability.

As detailed above, Defendants were aware of this arbitration agreement from the commencement of this action. Defendants' documents reveal that they institute this arbitration agreement on a yearly basis to all employees working in the warehouse.  Defendants do not dispute their knowledge of the arbitration agreement and make no excuse for their delayed attempted enforcement of this agreement.

If the Court rules to Compel arbitration, then Defendants' conduct will have wasted Plaintiff's time and resources, through malicious conduct

## III.    **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests the Court to Deny Defendants' Motion to Compel Arbitration.  However, if Defendants' Motion to Compel is granted, Plaintiff respectfully requests his Cross Motion for Fees be granted as well.


Dated: New York, New York                    Respectfully submitted,
          September 27, 2021

                                   By:      */s/ C.K. Lee*_____
                                            C.K. Lee, Esq.
                                            Lee Litigation Group, PLLC
                                            C.K. Lee (CL 4086)
                                            Anne Seelig (AS 3976)
                                            148 West 24th Street, 8th Floor
                                            New York, NY 10011
                                            Tel: (212) 465-1188
                                            Fax: (212) 465-1181
                                            *Attorneys for Plaintiff,*
                                            *FLSA Collective Plaintiffs and the Class*