**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMADOR DE JESUS, *on behalf of himself,*<br>*FLSA Collective Plaintiffs and the Class,* | Civil Action No.   20-cv-06305 |
| Plaintiff, | |
| v. | |
| GREGORYS COFFEE MANAGEMENT, LLC,<br>and GREGORY ZAMFOTIS, | |
| Defendants. | |

**BRIEF IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION**
**AND OPPOSING PLAINTIFF'S CROSS-MOTION FOR SANCTIONS**

**WHITE AND WILLIAMS LLP**

By:
    George C. Morrison, Esquire
    Times Square Tower
    7 Times Square, Suite 2900
    New York, NY 10036
    (646) 837-5776
    (212) 244-6200 Fax
    morrisong@whiteandwilliams.com

27865890v.4

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     LEGAL ANALYSIS.............................................................................................1

     A.     The Parties Agreed to Arbitrate This Matter and That Agreement Should
          be Enforced .............................................................................................1

          1.     Delay Alone Is Insufficient to Support Waiver ...........................................3

          2.     The Parties Have Not Yet Engaged in Protracted Litigation.......................4

          3.     Plaintiff Will Not Be Prejudiced By Proceeding to Arbitration .................6

               a.     Putative Class Members Who Are Not Parties to this Suit
                   Have Not Been Prejudiced............................................................6

               b.     De Jesus Has Not Been Prejudiced By this Suit ............................7

     B.     De Jesus Cannot Show That The Arbitration Agreements Are
          Unconscionable.......................................................................................9

          1.     De Jesus Cannot Show That Gregorys Coffee Interfered with
               Putative Class Members' Rights in this Litigation ......................................9

           2.     De Jesus Has Not Shown that Gregorys Coffee Misrepresented the
               Agreement to Him......................................................................................10

          3.     All Claims Arising From His Employment Are Covered By the
               Arbitration Agreement ..............................................................................13

     C.     Gregorys Coffee Does Not Come Before This Court With Unclean Hands .........14

     D.     De Jesus Has Not Established a Claim for Rule 11 Sanctions .............................15

III.    CONCLUSION AND RELIEF REQUESTED .................................................17

27865890v.4

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AJ Energy LLC v. Woori Bank*,
  2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) .......................................................................16

*Bankers Conseco Life Ins. Co. v. Feuer*,
  2018 U.S. Dist. LEXIS 43828 (S.D.N.Y. Mar. 13, 2018) ......................................................14

*Bittencourt v. Ferrara Bakery & Café, Inc.*,
  310 F.R.D. 106 (S.D.N.Y. 2015) ...........................................................................................5, 7

*Brandifino v. Cryptometrics, Inc.*,
  2010 NY Slip Op 20062, 27 Misc. 3d 513, 896 N.Y.S.2d 623 (Sup. Ct.).................................2

*Brennan v. Bally Total Fitness*,
  198 F. Supp. 2d 377 (S.D.N.Y. 2002).....................................................................................11

*Cabrera v. Stephens*,
  No. 16-CV-3234 (ADS) (SIL), 2017 U.S. Dist. LEXIS 160044 (E.D.N.Y. Sep.
  28, 2017) ....................................................................................................................................7

*Chen-Oster v. Goldman, Sachs & Co.*,
  449 F. Supp. 3d 216 (S.D.N.Y. 2020).......................................................................................6

*Ciago v. Ameriquest Mortg. Co.*,
  295 F. Supp. 2d 324 (S.D.N.Y. 2003).....................................................................................11

*Com-Tech Associates v. Computer Associates International, Inc.*
  938 F.2d 1574 (2d Cir. 1991).....................................................................................................5

*Cotton v. Slone*,
  4 F.3d 176 (2d Cir. 1993)...........................................................................................................6

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985)....................................................................................................................3

*Del Turco v. Speedwell Design*,
  623 F. Supp. 2d 319 (E.D.N.Y. 2009) ....................................................................................12

*Dixon v. NBCUniversal Media, LLC*,
  947 F. Supp. 2d 390 (S.D.N.Y. 2013).......................................................................................5

*Doe v. Trump Corp.*,
  453 F.Supp. 3d 634 (S.D.N.Y. 2020).........................................................................................7

27865890v.4

*Dunkin' Donuts of Am., Inc. v. Liberatore*,
  138 A.D.2d 559, 526 N.Y.S.2d 141 (App. Div. 1988) ..........................................................10

*Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*,
  149 F.3d 85 (2d Cir. 1998)........................................................................................................15

*Factor v. Societe Generale N. Am., Inc.*,
  2006 U.S. Dist. LEXIS 32565 (S.D.N.Y. May 24, 2006)......................................................14

*Galin v. Hamada*,
  283 F.Supp.3d 189 (S.D.N.Y. 2017).......................................................................................16

*Griffin v. Aldi, Inc.*,
  No. 5:16-CV-0354, 2017 U.S. Dist. LEXIS 71840 (N.D.N.Y. May 11, 2017)........................9

*Gutierrez v. Wells Fargo Bank, NA*,
  889 F.3d 1230 (11th Cir. 2018) ..................................................................................................6

*Herko v. Metro. Life Ins. Co.*,
  978 F. Supp. 141 (W.D.N.Y. 1997) ...........................................................................3, 4, 5, 7, 17

*Hetchkop v. Woodlawn at Grassmere, Inc.*,
  116 F.3d 28 (2d Cir. 1997)........................................................................................................12

*In re A2p SMS Antitrust Litig.*,
  972 F. Supp. 2d 465 (S.D.N.Y. 2013).......................................................................................14

*In re Agent Orange Prod. Liability Litigation*,
  818 F.2d 145 (2d Cir. 1987)........................................................................................................6

*In re Certain Underwriter Defendants*,
  294 F.3d 297 (2d Cir. 2002)........................................................................................................6

*In re Crysen/Montenay Energy Co.*,
  226 F.3d 160 (2d Cir. 2000)........................................................................................................1

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  244 F. Supp. 2d 247 (S.D.N.Y. 2003).........................................................................................6

*Isaacs v. OCE Bus. Servs., Inc.*,
  968 F. Supp. 2d 564 (S.D.N.Y. 2013).......................................................................................12

*Keytrade U.S.A., Incorporated v. Ain Temouchent M/V*,
  404 F.3d 891 (5th Cir. 2005) ......................................................................................................7

*Kleiner v. First Nat'l Bank*,
  751 F.2d 1193 (11th Cir. 1985) ..................................................................................................9

*Kramer v. Hammond*,
  943 F.2d 176 (2d Cir. 1991)...........................................................................................2

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  626 F.3d 156 (2d Cir. 2010)........................................................................................2, 7

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001).........................................................................................2

*Maines Paper & Food Serv. v. Adel*,
  256 A.D.2d 760, 681 N.Y.S.2d 390 (App. Div. 1998) ..........................................10

*Matter of Smith Barney Shearson v. Sacharow*,
  91 NY2d 39 (1997) ...................................................................................................1, 2

*McCaddin v. Southeastern Marine Inc*,
  567 F. Supp. 2d 373 (E.D.N.Y. 2008) .....................................................................13

*Molina v. Coca-Cola Enterprises, Inc.*,
  No. 08-cv-6370, 2009 U.S. Dist. LEXIS 47828 (W.D.N.Y. June 8, 2009)...........10

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
  460 U.S. 1 (1983).....................................................................................................2, 14

*Nayal v. HIP Network Servs, IPA, Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009)......................................................................11

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986).....................................................................................16

*Pimpinello v. Swift & Co.*,
  253 N.Y. 159, 170 N.E. 530 (1930)...........................................................................13

*Ralph Oldsmobile, Inc. v. GMC*,
  99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893 (S.D.N.Y. Sep. 7, 2001) ........9

*Rodick v. City of Schenectady*,
  1 F.3d 1341 (2d Cir. 1993).........................................................................................16

*Rush v. Oppenheimer & Co.*,
  779 F.2d 885 (2d Cir. 1985)....................................................................................3, 13

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991).......................................................................................4

*Storey v. Cello Holdings, L.L.C.*,
  347 F.3d 370 (2d Cir. 2003).......................................................................................16

27865890v.4

*Sweater Bee by Banff v. Manhattan Industries*,
    754 F.2d 457, *cert. denied*, 474 U.S. 819 (1985).......................................................5

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
    310 F.3d 102 (2d Cir. 2002)...........................................................................................2

*Victorio v. Sammy's Fishbox Realty Co., LLC.*,
    2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. 2020)..................................10, 11, 12, 13

*Zhu v. Hakkasan NYC LLC*,
    291 F. Supp. 3d 378 (S.D.N.Y. 2017).........................................................................12

## STATUTES

29 U.S.C. § 256(b)......................................................................................................................6

Federal Arbitration Act ...............................................................................................................3

FLSA.......................................................................................................................................4, 6

## OTHER AUTHORITIES

Fed. R. Civ. P. 11(b)(1)............................................................................................................16

Fed. R. Civ. P. 11(b)(3)............................................................................................................16

Fed. R. Civ. P. 11(c)................................................................................................................16

Rule 11.................................................................................................................................15, 16

Rule 11(b).................................................................................................................................16

Rule 23.......................................................................................................................................6

## I.      <u>INTRODUCTION</u>

Upon learning about the existence of an arbitration agreement between De Jesus and Gregorys Coffee, Gregorys Coffee immediately provided the arbitration agreement to De Jesus's counsel and moved this Court to compel arbitration.  De Jesus looks now to avoid his obligation to arbitrate through shaky factual and legal arguments that Gregorys Coffee waived its right to arbitrate and that the arbitration agreement was unconscionable.

Gregorys Coffee did not waive its right to arbitrate.  Courts have compelled arbitration when a movant waits 18 months to compel arbitration when there is no substantial prejudice to the non-movant.  Here, De Jesus cannot show substantial prejudice because there has been minimal discovery, no settlement discussions and no briefs on the merits.  Further, De Jesus provides no evidence other that his own self-serving statement that a representative from Gregorys Coffee misrepresented the terms of the arbitration agreement to him, a non-English speaker.  And even if a representative did, which Gregorys Coffee strongly denies, that is still not enough to demonstrate that the arbitration agreements were unconscionable.  De Jesus had a responsibility to confirm the contents of the agreement and he did not do so.

For these and other reasons detailed below, De Jesus has not overcome the high bar for establishing waiver, unconscionability, or an entitlement to sanctions.  This Court should compel arbitration and deny De Jesus's request for sanctions.

## II.     <u>LEGAL ANALYSIS</u>

### A.      **The Parties Agreed to Arbitrate This Matter and That Agreement Should be Enforced**

Both federal and state policy strongly favor arbitration of disputes; therefore, waiver of a right to arbitrate is not lightly found.  *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000); *Matter of Smith Barney Shearson v. Sacharow*, 91 NY2d 39, 49 (1997).  "[A]ny doubts

-1-

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Therefore, courts should interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration. *Sacharow*, 91 NY2d at 49-50. A court should only find waiver when a party had made a clear showing of the other's intent to abandon the arbitration process. *Brandifino v. Cryptometrics, Inc.*, 2010 NY Slip Op 20062, ¶ 1, 27 Misc. 3d 513, 514, 896 N.Y.S.2d 623, 623 (Sup. Ct.).

While the courts have not announced a rigid formula for assessing waiver, courts generally consider the following three factors: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001). The Second Circuit has recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay. *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Substantive prejudice might occur "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration"; time and expense prejudice "can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay and expense." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)).

The party seeking to prove that another's right to arbitration has been waived faces a heavy burden. A burden that De Jesus cannot meet.

### 1.     Delay Alone Is Insufficient to Support Waiver

Before addressing the legal implications of when arbitration was requested, Gregorys Coffee must correct the facts as set forth by De Jesus (this will not be the only time).  De Jesus contends that there was an "over eight month" delay by Gregorys Coffee in seeking arbitration. (De Jesus Response, p. 4).  Later in De Jesus's response, the delay was referred to as a "tactical year long [sic] delay."  (De Jesus Response, p. 6).  In both cases, De Jesus has exaggerated the time between filing of the complaint and the motion to compel the agreed-upon arbitration proceeding. De Jesus filed his Complaint on December 29, 2020 and, after learning of the arbitration agreement, Gregorys Coffee requested arbitration on August 10, 2021. This period lasted just seven-and-a-half months.

Legally, De Jesus's argument does not fare better.  De Jesus cites to several cases that refused to compel arbitration when the movant waited less than six months to move for arbitration. (De Jesus Response, p. 4).  But De Jesus cites to none of the cases that refused to find the high bar of waiver met when faced with motions to compel more than seven-and-a-half months after a complaint was filed despite the presence of an arbitration agreement.  For example, in *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887-88 (2d Cir. 1985), the Second Circuit found it "beyond question" that an eight-month wait to move to compel was insufficient alone to demonstrate prejudice and compelled arbitration.  *Id.* at 887-888.  In so holding, the Court relied, in part, on the Supreme Court of the United States proclamation that the overriding purpose of the Federal Arbitration Act is to enforce privately made agreements to arbitrate and not "to promote the expeditious resolution of claims."  *Id.* at 888 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985)).

Eight months is not even the outer limit of what a court will permit without finding waiver. For example, in *Herko v. Metro. Life Ins. Co.*, 978 F. Supp. 141 (W.D.N.Y. 1997), the Court

compelled arbitration even though eighteen months had passed between the Defendant's responsive pleading and the motion to compel arbitration. *Id.* at 148. The Court found that neither party had "engaged in the level of protracted litigation with the potential for substantial amounts of wasted legal costs that would necessitate finding that Defendants had waived their right to arbitration . . . ." *Id.* at 148.

While Gregorys Coffee denies that there was any unreasonable delay, "delay standing alone is an insufficient basis to support waiver." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991). Here, neither the delay not the chance for prejudice supports the subversion of the agreement between Gregorys Coffee and De Jesus.

### 2.      The Parties Have Not Yet Engaged in Protracted Litigation

De Jesus attempts to characterize this litigation as "protracted" and the exchanged discovery as "extensive." (Response Brief, p. 5). If fact, the parties have **not** exchanged extensive discovery. The parties did initiate the process of exchanging preliminary information under this Court's FLSA discovery protocol for certified actions. De Jesus has produced a total of eight documents at this point. No depositions have been taken.[1] Furthermore, substantive settlement talks have not occurred. The parties never agreed to mediation at this time and only discussed exploring the possibility of mediation.

The mere fact that there has been a preliminary exchange of information does not establish the sort of protracted litigation that authorizes a party to forego the agreed-upon arbitration process. For example, in *Herko*, plaintiff served defendants with requests for production of documents. *Herko*, 978 F. Supp. at 143. The defendant who eventually moved to compel arbitration answered some of the document requests and objected to the rest. *Id.* Nearly ten months after providing

---

[1] De Jesus attached his counsels' bills to his Brief at Exhibit C. The Court will see no billing entries regarding extensive written discovery, depositions or settlement.

-4-

responses, the defendant moved to compel arbitration.  *Id.*  The Court held that despite the total passing of 18 months, the filing of a responsive pleading, and that both sides engaged in some discovery, "neither side ha[d] engaged in the level of protracted litigation with the potential for substantial amounts of wasted legal costs that would necessitate finding that Defendants had waived their right to arbitration of . . . claims." *Id.* at 148.  In so holding, the court distinguished another case where there had been extensive depositions and defending of several pre-trial motions, including motions for judgment on the pleadings and for partial summary judgment, and that the motion to compel arbitration was brought only four months before the scheduled trial date. *Id.* at 148 (distinguishing *Com-Tech Associates v. Computer Associates International, Inc.* 938 F.2d 1574, 1576 (2d Cir. 1991)).

The rule in the Second Circuit is that "litigation of substantial issues going to the merits may constitute a waiver of arbitration."  *Sweater Bee by Banff v. Manhattan Industries*, 754 F.2d 457, 461, *cert. denied*, 474 U.S. 819 (1985).  Here, the parties have not litigated substantial issues going to the merits of the litigation.  Even, De Jesus's decision to file a motion for conditional certification does not go to the merits of the litigation.  When considering a motion for conditional certification, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. *Bittencourt v. Ferrara Bakery & Café, Inc.*, 310 F.R.D. 106, 111-12 (S.D.N.Y. 2015).  In fact, in *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 405-06 (S.D.N.Y. 2013), the Court refused to grant a motion for conditional certification because the defendant moved to compel arbitration. *Id.* at 406.

Here, not much has happened.  The parties are at the initial stages of discovery and the only motion that has been filed not related to arbitration is the motion for conditional certification, which does not go to the merits of the litigation.

### 3.       Plaintiff Will Not Be Prejudiced By Proceeding to Arbitration

#### a.       *Putative Class Members Who Are Not Parties to this Suit Have Not Been Prejudiced*

With no citation to any authority, De Jesus begins his prejudice analysis by claiming that the class members would be prejudiced by the arbitral proceedings.  But prejudice is measured by its effect on parties, not potential parties.  *See Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) ("Waiver will be inferred when a party engages in protracted litigation that results *in prejudice to the opposing party.*").  But putative class action members are not parties to an action until the court certifies the class.  *In re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 164 (2d Cir. 1987); *In re Certain Underwriter Defendants*, 294 F.3d 297, 302 (2d Cir. 2002); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 235 (S.D.N.Y. 2020); *In re Oxford Health Plans, Inc. Sec. Litig.*, 244 F. Supp. 2d 247, 251 (S.D.N.Y. 2003).  Therefore, any potential prejudice to possible class members is irrelevant.  Further, to the extent that any of these potential class members also signed an arbitration agreement, Gregorys Coffee cannot yet assert its right to arbitrate.  *See, e.g.*, *Chen-Oster*, 449 F.Supp 3d at 234-235 (citing *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018)).

Unlike Rule 23 class actions, in an FLSA collective action, the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit.  *See* 29 U.S.C. § 256(b).  De Jesus did not seek conditional certification until June 9, 2021.  Gregorys Coffee requested arbitration two months later on August 10, 2021, while conditional certification was pending.  As such, there was no additional prejudice caused to putative class members by the timing of the motion to compel arbitration.  And even if there was, a district court may toll the limitations period to avoid inequitable circumstances, "giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the

-6-

circumstances are extraordinary enough to warrant equitable relief." *Cabrera v. Stephens*, No. 16-CV-3234 (ADS) (SIL), 2017 U.S. Dist. LEXIS 160044, at *22-23 (E.D.N.Y. Sep. 28, 2017). Therefore, the potential claims of others can be further protected, if necessary, by this Court.

### b. De Jesus Has Not Been Prejudiced By this Suit

De Jesus also claims that he will suffer prejudice and then cites to case law that holds that substantial prejudice may be shown when a party seeks to compel arbitration after it loses a motion on the merits in court or after the court proceedings do not go as planned. (Response Brief, p. 6-7 (citing *Doe v. Trump Corp.*, 453 F.Supp. 3d 634, 638-639 (S.D.N.Y. 2020) and *La Stadium & Exposition Dist. V. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 161 (2d Cir. 2010)). First, Gregorys Coffee did not lose any motions on its merits. The only non-arbitration related motion is De Jesus's Motion for Conditional Certification, which by its own terms does not concern the underlying merits of this litigation. *E.g.*, *Bittencourt*, 310 F.R.D. at 111-12. Therefore, De Jesus cannot show prejudice by establishing that Gregorys Coffee lost a motion on the merits of the lawsuit. Similarly, De Jesus cannot credibly allege, as it does, that its Motion for Conditional Certification made Gregorys Coffee reevaluate the strength of its defense on the merits when the Motion did not concern the merits of the case. (Response Brief, p. 7).

De Jesus also contends that the discovery it provided to Gregorys Coffee creates prejudice. (Response Brief, p. 7). However, the mere exchange of minimal discovery, as has been exchanged here, does not definitively establish prejudice. *E.g., Herko*, 978 F. Supp. at 148. *Accord, e.g., Keytrade U.S.A., Incorporated v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (concluding that a party may participate in discovery without waiving the right to arbitrate "so long as it does not shower[] [the opposing party] with interrogatories and discovery requests.") (internal quotation marks omitted)). More specifically, De Jesus contends that his affidavit would not have been provided as part of discovery and Gregorys Coffee would not have a chance to cross-

-7-

examine him over its contents.  (Response Brief, p. 7).  But the affidavit was not provided as part of discovery.  Rather, De Jesus provided it as an attachment to his Motion for Conditional Certification, which as mentioned several times before has nothing to do with the merits of his claim.

De Jesus also claims that he, a workingman, experienced undue expense litigating this matter as a class action.  (Response Brief, p. 7).  First, he did not litigate as a class; rather, he had hoped that this matter would eventually be litigated as a class.  There is always a risk that will not happen.  Second, De Jesus does not allege with any specificity how any money came out of his pocket.  Third, a review of De Jesus's attorney bills demonstrates that not much work was done on this file before Gregorys Coffee moved for arbitration.  *See* Ex. C to Response Brief.  There are few entries regarding settlement negotiations and discovery.  Further, most of the billing comes in response to the motion to compel arbitration.  For example, Robert Kansao, who billed the most time on this matter, billed only 13.1 hours prior to receiving the arbitration agreements and 25.6 hours related to the agreement.  *Id.*  C.K. Lee, trial counsel and managing partner, billed 2.7 hours on the arbitration issue and 3.6 hours prior to being provided with the arbitration agreement.  A younger associate and some paralegals billed less than 25 hours for the remainder of the pre-arbitration tasks for this matter.

The bar is high to dismiss the federal and state policy in favor of arbitration as well as the parties' own agreement to arbitrate.  Here, De Jesus has not demonstrated any reason why this Court should ignore the arbitration agreement and compel the parties to remain in Court.

27865890v.4

**B.     De Jesus Cannot Show That The Arbitration Agreements Are Unconscionable**

   **1.     De Jesus Cannot Show That Gregorys Coffee Interfered with Putative Class Members' Rights in this Litigation**

De Jesus first contends that the arbitration agreements are unconscionable because they somehow violated the protections owed to potential class members.  (Response Brief, p. 8).  Frankly, Gregorys Coffee is confused by this contention.  As De Jesus admits, the arbitration agreements were signed by De Jesus in 2018 and 2019 before De Jesus filed this lawsuit in December 2020.  (Response Brief, p. 10).  Therefore, in no way, could the purpose of these arbitration agreements be to derail this lawsuit since this lawsuit did not exist.  Of course, De Jesus provides no case law to support the position that an employer cannot use arbitration agreements to deter future litigation because that is the very purpose of these agreements.  Yes, De Jesus did cite some cases, but those cases all concern interference with active litigation, something that did not occur here.  *See Griffin v. Aldi, Inc.*, No. 5:16-CV-0354 (LEK/ATB), 2017 U.S. Dist. LEXIS 71840, at *2 (N.D.N.Y. May 11, 2017); *Ralph Oldsmobile, Inc. v. GMC*, 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893, at *1 (S.D.N.Y. Sep. 7, 2001) (holding it was inappropriate for defendant, a car maker, to seek releases from franchisees who were not aware of the pending class action); *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985) (holding that it was coercive for the defendant bank to call borrowers who were potential class members in pending litigation and ask them to opt out of the litigation).[2]

De Jesus has not provided nor is Gregorys Coffee aware of any case law that prohibits Gregorys Coffee from seeking an arbitration agreement from its employees for cases not yet

_____

   [2] In fact, on page 9 of De Jesus's Brief, he provides a string citation of cases he admits concerns employers having employees sign arbitration agreements after class litigation has begun.

contemplated or filed.  If that were the law, it would undermine the strong federal and state policy interests in favor of arbitration.

### 2.    De Jesus Has Not Shown that Gregorys Coffee Misrepresented the Agreement to Him

To undermine his agreement to proceed in arbitration on employment-related claims, De Jesus provides a self-serving declaration that he is unable to read English and did not know he was signing an arbitration agreement.  *See* Dec. of De Jesus at ¶¶ 2-4.  De Jesus does cites to *Maines Paper & Food Serv. v. Adel*, 256 A.D.2d 760, 761, 681 N.Y.S.2d 390, 391 (App. Div. 1998) for the proposition that an inability to adequately understand English is an insufficient basis to avoid contractual obligations.  (Response Brief, p. 11).  *See also Molina v. Coca-Cola Enterprises, Inc.*, No. 08-cv-6370, 2009 U.S. Dist. LEXIS 47828, *8 (W.D.N.Y. June 8, 2009) (holding that non-English speaker's signature on arbitration agreement would be binding because plaintiff's decision not to seek assistance before signing amounted to gross negligence).  He then turns to another case, *Victorio v. Sammy's Fishbox Realty Co., LLC.*, 2015 U.S. Dist. LEXIS 61421, *28 (S.D.N.Y. 2020) to assert that if the contents of the writings are then misrepresented to the non-English speaker, the writing may be declared void.  (Response Brief, p. 11).  What De Jesus does not do is explain that in each case the Court compelled arbitration.

In *Maines Paper*, the defendant admitted "he made no attempt to read the document before signing it nor did he attempt to have someone else read or explain it to him."  *Maines Paper*, 256 A.D.2d at 761.  The Court accepted as true the defendant's contention that the plaintiff's representatives misrepresented the agreement.  *Id.* But the Court found it irrelevant because the misrepresentation would have been exposed if the defendant had read or had someone read to him the contents of the agreement.  *Id.* at 761-762 (citing *Dunkin' Donuts of Am., Inc. v. Liberatore*, 138 A.D.2d 559, 560, 526 N.Y.S.2d 141, 143 (App. Div. 1988) ("the mere fact that the guarantor

-10-

was not told that a personal guarantee was among the documents she was asked to sign is insufficient to establish a defense of fraudulent inducement.")).

In *Victorio*, Spanish-speaking employees tried to void arbitration agreements because the employer purportedly misrepresented their content to the employees. *See Victorio*, 2015 U.S. Dist. LEXIS 61421, *5-9. After conducting a hearing, the Court upheld the validity of the agreements and compelled arbitration. *Id.* at *9, 48-49.

First, the Court held that the agreements were not unconscionable. *Id.* at *31. The Court recognized that an imbalance in bargaining power does not create an unconscionable agreement. *Id.* It is only when that imbalance is "coupled with high pressure tactics that coerce [a signatory's] acceptance of onerous terms, [that a signatory can be considered to have] lacked a meaningful choice." *Id.* at *32 (citing *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (insertions in original)).

The Court noted that plaintiffs felt pressured to sign the agreements to keep their jobs, but the Court correctly held that this does not make the agreements unconscionable. *Id.* at 33. Specifically, the Court recognized "even if the Agreement was a form contract offered on a 'take-it-or-leave-it basis and [the party] refused to negotiate the Arbitration Provision, this is not sufficient under New York law to render the provision procedurally unconscionable." *Id.* at *32-33 (citing *Nayal v. HIP Network Servs, IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (collecting cases)). Furthermore, the "mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment, also is insufficient to invalidate the provision." *Id.* at *33 (citing *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003)). The Court further noted there was no evidence that the plaintiffs were required to sign the document on the spot. *Id.* at *34 (noting even if there was such evidence it would be insufficient

-11-

to establish unconscionability); *Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 391 (S.D.N.Y. 2017). Similarly, De Jesus does not allege that he was required to sign the documents without an opportunity to have them reviewed. *See generally* Dec. of De Jesus.

Also, the Court noted that "a defense of unconscionability requires both procedural and substantive unconscionability. Substantive unconscionability exists when the terms are 'grossly unreasonable' by favoring the party seeking to enforce the contract." *Id.* at *34 (citing *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)). When both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer." *Id.* (citing *Isaacs*, 968 F. Supp. 2d at 569). Here, both parties are bound to arbitrate and Gregorys Coffee is required to pay for the costs of the arbitration. Therefore, the agreement is not substantively unconscionable.

Like in *Victorio*, De Jesus's claim generally boils down to a claim that he was persuaded to sign without reading because someone allegedly misrepresented what the form included.[3] This type of fraud in the execution occurs only when "there is a misrepresentation as to the character or essential terms of a proposed contract, and a party signs without knowing or having a reasonable opportunity to know of its character or essential terms." *Id.* at *35-36 (citing *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 335 (E.D.N.Y. 2009) (quoting *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 32 (2d Cir. 1997)). For De Jesus to win on a claim of fraud in the execution, he must show "excusable ignorance of the contents of the writing."[4] *Hetchkop*, 116

---

[3] De Jesus also claims that the arbitration agreements inclusion with the wage notice was somehow improper. Gregorys Coffee provided several employment-related documents relevant to De Jesus at one time. Far from being duplicitous, it is efficient.

[4] The typical finding of ignorance is when "one party secretly substitutes one type of document for another, after the other party has already read the document but prior to his signing

27865890v.4

F.3d at 32.  In *Victorio*, the Court found that plaintiffs' ignorance was not excusable, because plaintiffs made no reasonable effort to learn of the contents of the documents.  *Id.* at *37.

In New York, the signatory to a contract is conclusively bound to it even if "his mind never gave assent to the terms expressed . . . ."  *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162, 170 N.E. 530 (1930).  The circumstances that took place in *Victorio* did not rise to the level of fraud or misrepresentation that supported plaintiffs' contentions that there was no meeting of the minds and through no fault of their own. Therefore, the *Victorio* Court compelled arbitration.  There is no daylight between *Victorio* and this case.  De Jesus has not shown any reason for this Court to find that he did not have an opportunity to independently learn of the contents of the documents he was provided by Gregorys Coffee.  Therefore, this Court can deny his claim of unconscionability without holding a hearing.

### 3.    All Claims Arising From His Employment Are Covered By the Arbitration Agreement

Without citation to any authority, De Jesus claims that the language of the arbitration agreement would only apply prospectively so any damages suffered before the first arbitration agreement would not be arbitrable.  De Jesus misreads the arbitration agreement.

The arbitration agreement covers "any dispute or claim that arises out of or relates to your employment, or that arises out of or is based on any employment relationship . . . "  *See* Arbitration Agreement.  The allegations made by De Jesus "relate to" his employment and were not made until after he signed the arbitration agreement. Under the clear language of the arbitration agreement, he must arbitrate all his claims.[5]  Furthermore, Gregorys Coffee's interpretation of the

---

it."  *Id.* at *36 (citing *McCaddin v. Southeastern Marine Inc*, 567 F. Supp. 2d 373 (E.D.N.Y. 2008)).

[5] If the Court should find that only a portion of a De Jesus claim is arbitrable, this weighs against finding waiver of arbitration.  *See Rush*, 779 F.2d at 888-889 (finding that waiver should

arbitration clause is consistent of the requirement that arbitration clauses are broadly applied in order to encourage the resolution of matters through arbitration rather than the courts.  *E.g.*, *Factor v. Societe Generale N. Am., Inc.*, 2006 U.S. Dist. LEXIS 32565, at *5 (S.D.N.Y. May 24, 2006) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24)).

### C.      Gregorys Coffee Does Not Come Before This Court With Unclean Hands

De Jesus also contends that Gregorys Coffee cannot compel arbitration because it comes to this Court with unclean hands.  De Jesus cites to no authority that holds that this is an appropriate doctrine when one signatory to an arbitration agreement seeks to compel another signatory to participate in the agreed-upon arbitration.  Most of the cases in New York addressing this doctrine concern the application of equitable estoppel when the party seeking to compel arbitration was not a signatory to the arbitration agreement.  *See, e.g.*, *Bankers Conseco Life Ins. Co. v. Feuer*, 2018 U.S. Dist. LEXIS 43828, at *20-22 (S.D.N.Y. Mar. 13, 2018); *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013).  Further, De Jesus has not made a showing that Gregorys Coffee had unclean hands.

De Jesus's allegations of unclean hands are based on conjecture that do not match reality.  For example, he alleges that Gregorys Coffee knew about the arbitration agreements from the beginning of the litigation.  In fact, these arbitration agreements were only used in the commissary and were not distributed companywide.  *See* Declaration of Gary Barnes (Ex. XX) at ¶ 3.  The agreements were only unearthed in August 2021, and only subsequent to that, did the now current

---

not be found when movant to compel arbitration participated in judicial proceedings that included some claims that were not arbitrable).

Chief of Staff at Gregorys Coffee learn that the commissary had used arbitration agreements for several years. *Id.* at ¶ 4.

De Jesus also mistakenly alleges that Gregory Zamfotis signed these forms and oversaw the signing of the agreements on a yearly basis. (Response Brief, p. 15). In fact, it was George Zamfotis and not Gregory Zamfotis that executed these agreements on behalf of Gregorys Coffee. *See* Declaration of Gary Barnes (Ex. A) at ¶ 5; Arbitration Agreements (Exs. A and B). George Zamfotis was, at that time, the manager of the commissary. *See* Declaration of Gary Barnes (Ex. A) at ¶ 5. Several months before this litigation was filed, George Zamfotis, stepped away from his role as manager of the commissary and was replaced by Matt Delaney. *Id.* at ¶¶ 6-7. During Delaney's tenure as commissary manager, he rearranged some files and destroyed other files. *Id.* at ¶ 7. He was let go in September 2020. *Id.* While George Zamfotis returned to his managerial role, there were many records that could not be located. *Id.* at ¶ 8. Further, Gregorys Coffee moved its main offices in May 2020 and many files and records were boxed up. *Id.* at ¶ 11. Some of the boxes were lost or misplaced. *Id.*

In reality, Gregorys Coffee did not delay handing over these arbitration agreements. In fact they were not found until August 2021 and were immediately provided to De Jesus's counsel. Under such a scenario, De Jesus cannot establish that Gregorys Coffee acted fraudulently or deceitfully as required to maintain such a defense. *See Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998). Similarly, for the reasons stated above in section II.B.2, De Jesus cannot show any fraud in the execution of the arbitration agreements.

**D.   De Jesus Has Not Established a Claim for Rule 11 Sanctions**

De Jesus also countermoves for either Rule 11 sanctions or asks this Court to exercise its discretion and impose sanctions. For the reasons detailed above and in the original Motion to

27865890v.4

Compel, Gregorys Coffee has properly moved to compel arbitration and therefore the request for sanctions has no merits.

Rule 11(b) provides that, "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1), and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3).

If a court determines Rule 11(b) has been violated, it may, but is not required to, impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c). "The standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy." *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *10 (S.D.N.Y. Sept. 26, 2019). Courts must resolve all doubts in favor of the non-movant and may impose sanctions only where the conduct was objectively unreasonable." *Galin v. Hamada*, 283 F.Supp.3d 189, 201 (S.D.N.Y. 2017) (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003)) (internal quotations omitted)); *see, e.g.*, *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) ("[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." (internal quotations omitted)).

De Jesus suggests that its "silence clearly voices their culpability." (Response Brief, p. 17). But De Jesus does not explain why Gregorys Coffee needed to explain its delay before De Jesus attempted to argue waiver. Once De Jesus argues waiver, Gregorys Coffee provided this

Court with an affidavit explaining why the agreements were not immediately known to Gregorys Coffee and its attorneys and that they were provided to De Jesus as soon as practical. *See* Declaration of Gary Barnes.

Another purported basis for sanctions is that a party to this lawsuit, Gregory Zamfotis, was a signatory on the arbitration agreements and therefore had to know of their existence. (Response Brief, p. 15). But as previously stated, this basis for sanctions is based on a misreading of the arbitration agreements. The agreements were not signed by Gregory Zamfotis, but were signed by George Zamfotis. *See* Arbitration Agreements (Exs. A and B); Declaration of Gary Barnes (Ex. A) at ¶ 5.

As discussed above, New York courts have permitted delays of up to 18 months and still compelled arbitration when there has been no motions on the merits and little discovery. *Herko*, 978 F. Supp. at 148. It was therefore reasonable for Gregorys Coffee to believe it had a good-faith basis to move to compel arbitration once the agreements were located. Indeed, as established above, Gregorys Coffee has set forth a robust defense of its actions both factually and legally. Therefore, De Jesus's Cross-Motion for Sanctions should be denied.

## III.   <u>CONCLUSION AND RELIEF REQUESTED</u>

For these reasons and those set forth in the Motion to Compel, this Court should dismiss the Complaint and permit the parties to arbitrate De Jesus's employment-related claims. This Court should also deny De Jesus's Cross-Motion for Sanctions. Alternatively, Gregorys Coffee requests a hearing on De Jesus's claim that the arbitration agreements were unconscionable and for his request for sanctions.

27865890v.4

Respectfully submitted,


**WHITE AND WILLIAMS LLP**

George C. Morrison, Esquire
Times Square Tower
7 Times Square, Suite 2900
New York, NY 10036
(646) 837-5776
(212) 244-6200 Fax
morrisong@whiteandwilliams.com

October 11, 2021

-18-