Clerk's Office
Filed Date:  11/29/21

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMADOR DE JESUS, *on behalf of himself, FLSA Collective Plaintiffs and the Class*,

                Plaintiff,

v.

GREGORYS COFFEE MANAGEMENT, LLC, and GREGORY ZAMFOTIS,

                Defendants.

**MEMORANDUM & ORDER**
20-CV-6305 (MKB)

---

MARGO K. BRODIE, United States District Judge:

Plaintiff Amador De Jesus, on behalf of himself and others similarly situated, commenced the above-captioned class and collective action against Defendants Gregorys Coffee Management, LLC ("Gregorys Coffee"), and Gregory Zamfotis on December 29, 2020, alleging violations of the Fair Labor Standards Act and the New York Labor Law. (Compl., Docket Entry No. 1.) On September 17, 2021, Defendants moved to compel arbitration, asserting that Plaintiff must arbitrate his employment claims, and Plaintiff opposed the motion.[1]

For the reasons set forth below, the Court orders a hearing on the validity and unconscionability of the arbitration agreements signed by Plaintiff in 2018 and 2019.

---

[1] (Defs.' Mot. to Compel Arb. ("Defs.' Mot."), Docket Entry No. 33; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 34; Pl.'s Opp'n to Defs.' Mot. and Mot. for Att'ys' Fees ("Pl.'s Opp'n"), Docket Entry No. 36; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 39; Pl.'s Reply in Supp. of Pl.'s Mot. for Att'ys' Fees ("Pl.'s Reply"), Docket Entry No. 41.)

I. **Background**

    a. **Plaintiff's claims**

Gregorys Coffee operates a chain of coffee shops.[2] Defendants' warehouse supplier (the "Warehouse") prepares all of the pastries and baked goods sold at Gregorys Coffee shops. (Compl. ¶ 6.)

In January of 2014, Defendants employed Plaintiff to work as a cook and baker at the Warehouse, which is located in Long Island City, New York. (*Id.* ¶ 23.) From the beginning of his employment until in or about January of 2017, Plaintiff worked sixty hours per week: ten hours per day, from 6:00 AM to 4:00 PM, for six days a week. (*Id.*) From in or about January of 2017 until the end of his employment with Defendants on March 17, 2020, Plaintiff regularly worked fifty-four hours per week: nine hours per day, from 6:00 AM to 3:00 PM, six days per week. (*Id.*) Throughout Plaintiff's employment, Defendants required Plaintiff to work through his thirty-minute meal break at least twice a week even though Plaintiff clocked out for his break. (*Id.* ¶ 25.) Defendants did not pay Plaintiff for this time. (*Id.*) In addition, Defendants required Plaintiff to clock out at the end of his shift but also required him to keep working without pay for approximately thirty minutes, three times a week. (*Id.* ¶ 26.) Defendants never paid Plaintiff the spread of hours premium for each workday exceeding ten hours and Plaintiff

---

    [2] The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. In addition to the Complaint, the facts are taken from the Declaration of Amador De Jesus, ("Pl.'s Decl."), Docket Entry No. 38; the Declaration of Gary Barnes, Chief of Staff of Gregorys Coffee, ("Barnes Decl."), Docket Entry No. 44; and the exhibits attached to the parties' papers. A court may consider documents outside of the pleadings for the purposes of determining the arbitrability of a dispute. *Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 244 n.2 (S.D.N.Y. 2010) (first citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32–33 (2d Cir. 2001); and then citing *BS Sun Shipping Monrovia v. Citgo Petrol. Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 (S.D.N.Y. Aug. 8, 2006)).

did not receive a notice of pay rate. (*Id.* ¶¶ 27–28.) From the beginning of his employment until in or about January of 2017, Defendants paid Plaintiff a fixed salary of $550.00 per week regardless of hours worked. (*Id.* ¶ 23.) From in or about January of 2017 until in or about January of 2020, Defendants paid Plaintiff $15.00 per hour. (*Id.*) From January of 2020 until March 17, 2020, when Defendants terminated Plaintiff's employment, Defendants paid Plaintiff $15.50 per hour. (*Id.*) Defendants paid Plaintiff in a combination of checks and cash. (*Id.*) Based on Plaintiff's direct observations and conversations, other non-exempt employees are and have been similarly situated. (*Id.* ¶ 12.)

### i.  2018 and 2019 Arbitration Agreements

Plaintiff signed two arbitration agreements during his employment. The first was signed on January 15, 2018, and reads:

> You agree as a condition and in consideration for new or continued employment that any dispute or claim that arises out of or that relates to your employment, or that arises out of or that is based upon the employment relationship (including but not limited to any wage claim, FLSA or NYLL claim, any claim for wrongful termination, or any claim based upon any statue [sic], regulation, or law, including those dealing with employment discrimination, sexual harassment, civil rights, age, or disabilities), shall be resolved by arbitration in accordance with the then effective arbitration rules of the State of New York. The arbitration is of no cost to you and will be resolved on a case by case basis to be overseen by an independent and impartial arbitrator. You will have the opportunity to select one arbitrator from a list to be provided. Accordingly, you are hereby notified that you will be unable to seek class certification or class action status via the filing [of] any lawsuit regarding the above-mentioned claims. The decision of the arbitrator will be final and will wholly resolve the aforementioned dispute.

(Arbitration Agreement dated Jan. 15, 2018 ("2018 Arbitration Agreement"), annexed to Defs.' Mem. as Ex. A, Docket Entry No. 34-1.) Plaintiff signed a second agreement on January 18, 2019, which is substantially identical to the 2018 Arbitration Agreement. (Arbitration Agreement dated Jan. 18, 2019 ("2019 Arbitration Agreement"), annexed to Defs.' Mem. as Ex.

3

B, Docket Entry No. 34-2.)

When presented with the 2018 Arbitration Agreement and the 2019 Arbitration Agreement (collectively, the "Arbitration Agreements"), which were written in English, Defendants told Plaintiff that he "had to sign the [Arbitration Agreements] to continue working for Defendants," which he did. (Pl.'s Decl. ¶ 3.) Plaintiff's primary language is Spanish, and he is incapable of reading English. (*Id.* ¶ 2.)

In August of 2021, Gary Barnes, Chief of Staff of Gregorys Coffee, learned that Plaintiff and other Gregorys Coffee employees had signed the Arbitration Agreements. (Barnes Decl. ¶ 3.) Barnes immediately provided copies to Plaintiff's counsel. (*Id.*) Barnes later learned that a manager had utilized arbitration agreements in the "commissary," where Plaintiff worked, for a period of time several years ago, and that no other Gregorys Coffee employees were ever required to sign them. (*Id.* ¶ 4.) The Arbitration Agreements were also signed by George Zamfotis, a non-party to this action, who was the manager of the commissary for Gregorys Coffee at the time that the agreements were executed. (*Id.* ¶ 5.) Zamfotis stepped away from day-to-day management in March of 2020 and took on other roles within Gregorys Coffee. (*Id.* ¶ 6.) From approximately March until September of 2020, Matt Delaney oversaw the commissary and rearranged numerous items and files in the commissary and destroyed other documents, including personnel files. (*Id.* ¶ 7.) In May of 2020, Gregorys Coffee moved its main offices and many files and records were "boxed up," while others were "misplaced and lost in the move." (*Id.* ¶ 11.) In September of 2020, Defendants fired Delaney. (*Id.* ¶ 7.) Following Delaney's termination, Zamfotis returned to his role in overseeing the commissary. (*Id.* ¶ 8.) During this time, there were numerous records that he could not locate due to Delaney's actions. (*Id.*) While searching for records relevant to this case, Zamfotis found the files with the

4

Arbitration Agreements executed by Plaintiff.  (*Id.*)

### b.  Procedural background

Plaintiff filed a Complaint on December 29, 2020.  (Compl.)  Plaintiff seeks to represent all non-exempt employees employed by Defendants on or after the date that is six years before the filing of the Complaint, (the "FLSA Collective Plaintiffs").  (*Id.* ¶ 11.)  Plaintiff also alleges that he seeks to represent all such persons in a class action lawsuit under Federal Rule of Civil Procedure 23, (the "Class").  (*Id.* ¶ 14.)

On January 4, 2021, Magistrate Judge Peggy Kuo ordered the parties to engage in discovery and engage in early settlement discussions, or else be referred to formal mediation.  (Order dated Jan. 4, 2021, Docket Entry No. 9.)  On June 9, 2021, Plaintiff moved for conditional certification of his FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b).[3]  Defendants opposed the motion.[4]  On August 10, 2021, Defendants filed a motion for a pre-motion conference, seeking permission to file a motion requesting dismissal of the Complaint and to enforce arbitration.  (Mot. dated Aug. 10, 2021, Docket Entry No. 25.)

## II.  Discussion

### a.  Standard of review

The Federal Arbitration Act (the "FAA") requires courts to compel arbitration of claims that the parties have agreed to arbitrate.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Courts consider four factors in order to determine whether an action should be

---

[3] (Pl.'s Mot. for Conditional Collective Certification, Docket Entry No. 20; Pl.'s Mem. in Supp. of Pl.'s Mot. for Conditional Collective Certification, Docket Entry No. 21; Pl.'s Reply in Supp. of Pl.'s Mot. for Conditional Collective Certification, Docket Entry No. 23.)

[4] (Defs.' Opp'n to Pl.'s Mot. for Conditional Certification, Docket Entry No. 22; Defs.' Reply in Supp. of Defs.' Opp'n. to Pl.'s Mot. for Conditional Certification, Docket Entry No. 43.)

stayed in favor of arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)); *Garcia v. Golden Abacus Inc.*, No. 16-CV-6252, 2017 WL 2560007, at *2 (S.D.N.Y. June 13, 2017) (same).

Generally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BMC Stock Holdings, Inc.*, 796 F. App'x 45, 48 (2d Cir. 2019) (quoting same). When an agreement is clear, "it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) ("In answering the first question — whether the parties agreed to arbitrate — we look to 'state contract law principles.'" (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016))). An employee's right to pursue statutory claims may only be waived by a Collective Bargaining Agreement (CBA) if that waiver is "clear[] and unmistakable[]." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009); *see also Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83–84 (2d Cir. 2016) (refusing to compel arbitration where the CBA did not clearly encompass the plaintiffs' statutory claims).[5]

---

[5] Although Defendants also mention section 7503 of the New York Civil Practice Law and Rules, which "favors arbitration as a means of resolving disputes," (Defs.' Mem. 5–6), they

6

In deciding a motion to compel arbitration, courts apply a similar standard to that applied to a motion for summary judgment and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (citing *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171–72 (2d Cir. 2011); *see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 833–34 (2d Cir. 2021) (first quoting *Nicosia*, 834 F.3d at 229; and then quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). In addition, "[a] district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Nicosia*, 834 F.3d at 229 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

    b. **Unconscionability**

Defendants argue that the Arbitration Agreements are valid and should be enforced, as they were signed prior to the filing of this lawsuit, and thus any potential class members could not have had any protections violated. (Defs.' Reply 9–10.) Defendants also argue that Plaintiff has not showed that Gregorys Coffee misrepresented the Arbitration Agreements. (*Id.* at 11–13.)

Plaintiff argues that the Arbitration Agreements are unconscionable and cannot be

---

make no further arguments based on this provision and instead focus their arguments on the FAA. Accordingly, the Court applies the FAA in deciding the motion.

7

enforced because they violate protections owed to potential class members. (Pl.'s Opp'n 8–10.) In addition, Plaintiff argues that Defendants misrepresented the Arbitration Agreements, as Plaintiff does not speak English and is incapable of understanding any legal documents written in English. (*Id.* at 11.)

Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The question of unconscionability of an arbitration agreement must be resolved first, "as a matter of state law, before compelling arbitration pursuant to the FAA." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C.* v. *Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam)). Where the "arbitration agreement at issue contains a choice of law clause which provides that New York law will govern the agreement's construction and enforcement," the Court considers New York law of unconscionability. *Id.*; *see Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (applying state law principles when an FAA case involves a question of contract formation).

Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable . . . according to its literal terms." *Ragone*, 595 F.3d at 121 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)). "Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable." *Id.* (quoting *Nayal*, 620 F. Supp. 2d at 571). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." *Id.* (quoting *Nayal*, 620 F. Supp. 2d at 571); *see*

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991) (quoting *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir. 1984) (noting that the "purpose of the unconscionability doctrine is to prevent unfair surprise and oppression")); *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 483 (S.D.N.Y. 2011) ("For a contract to be held unconscionable, the party alleging the defect must generally show both substantive and procedural unconscionability. . . . That is, the contract must unreasonably favor one party over the other and the process of contract formation must have deprived the disadvantaged party of meaningful choice."); *Nayal*, 620 F. Supp. 2d at 571 (collecting cases).

### i. The Arbitration Agreements are not unconscionable because of this litigation

Plaintiff argues that the Arbitration Agreements must be revoked because they affect the rights of putative class members. (Pl.'s Opp'n 8–10.) In support, Plaintiff cites to a number of cases holding that arbitration agreements signed by current employees after the commencement of class litigation are deemed unconscionable and unenforceable, (*id.* at 9 (first citing *Weinstein v. Jenny Craig Operations, Inc.*, No. 105520/11, 2014 WL 10680367 (Sup. Ct., N.Y. County Sept. 8, 2014); then citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005); and then citing *Carnegie v H&R Block, Inc.*, 687 N.Y.S.2d 528 (Sup. Ct., N.Y. County 1999))).

"Arbitration agreements signed after litigation is commenced are deemed unconscionable and thus unenforceable." *Weinstein*, 2014 WL 10680367, at *2; *see In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 254 (holding that arbitration clauses signed by putative class members after litigation was commenced could not be enforced); *see also OConner v. Agilant Solutions, Inc.*, 444 F. Supp. 3d 593 (S.D.N.Y. 2020) (granting the plaintiffs' motion to invalidate enforcement of the arbitration agreement as to putative plaintiffs when the defendant

9

ordered putative members to sign the agreements only after the plaintiffs had filed their motion for conditional certification).

However, because Plaintiff signed the Arbitration Agreements in 2018 and 2019, prior to the commencement of this litigation in December of 2020, the simple act of filing this lawsuit as a collective or class action suit does not render the Arbitration Agreements unconscionable. *Cf. Weinstein*, 2014 WL 10680367, at *2 ("Clearly, defendant's endeavor to have its employees sign arbitration agreements was prompted by plaintiffs' commencement of this action.") Although Plaintiff alleges that Defendants were aware of other court cases and Department of Labor investigations advancing class action claims against Defendants at the time that Plaintiff signed the Arbitration Agreements, (Pl.'s Opp'n 8–10), the putative class members have not forfeited their rights as a result of Plaintiff signing the Arbitration Agreements prior to the commencement of this litigation. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 251 (holding that putative class members who had "forfeit[ed] their rights as potential plaintiffs" by signing arbitration agreements were protected as of the filing date of the case). Defendants do not move to compel putative class members to arbitrate their claims. Rather, Defendants seek only to compel Plaintiff to arbitrate his individual claims. Accordingly, Plaintiff's signing of the Arbitration Agreements does not violate the rights of the putative class members, and any purported unconscionability of these agreements would not affect the rights of the putative class members.

The Court therefore only considers whether the Arbitration Agreements are unconscionable as they apply to Plaintiff.

### ii. Procedural unconscionability

Defendants argue that Plaintiff has not claimed that Gregorys Coffee misrepresented the

10

Arbitration Agreements to him. (Defs.' Reply 10–13.) Instead, Defendants contend that Plaintiff argues that he "was persuaded to sign without reading because someone allegedly misrepresented what the form included," but "does not allege that he was required to sign the documents without an opportunity to have them reviewed." (Defs.' Reply 12.)

Plaintiff argues that Defendants provided him with several documents and told him they were "documents" he needed to sign but, because the documents were written in English and he is not an English speaker, he was not capable of reading and understanding the documents. (Pl.'s Opp'n 11.) In a sworn affidavit Plaintiff states that he received "some papers in English" and was "told that [he] had to sign the documents to continue working for Defendants," (Pl.'s Decl. ¶ 3); and he had no recollection of being provided with any arbitration agreement, (*id.* ¶ 4). Plaintiff also contends that Defendants intermingled the Arbitration Agreements with Plaintiff's wage notice. (Pl.'s Opp'n 11.) Accordingly, Plaintiff argues it would be understandable to "belie[ve] that the documents were liability waivers, tax forms, and wage notices." (*Id.*)

The doctrine of unconscionability "seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (quoting *United States v. Martinez*, 151 F.3d 68, 74 (2d Cir. 1998)). "Mere inequality in bargaining power" is not a sufficient basis for finding an arbitration clause unenforceable in the employment context. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *see Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019) (quoting *Gilmer*, 500 U.S. at 33). However, unequal bargaining power, when paired with high-pressure and coercive tactics, may demonstrate procedural unconscionability. *See Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002) (ruling that unequal bargaining power, when "coupled with high pressure tactics that coerce an

11

employee's acceptance of onerous terms," could be sufficient to demonstrate procedural unconscionability). These improper tactics may include "pressuring the prospective employee to sign the agreement without reading it, refusing to let her review the agreement with an attorney, or deceiving her as to its content." *Clinton*, 824 F. Supp. 2d at 484. "Where the significant facts germane to the unconscionability issue are essentially undisputed, the court may determine the issue without a hearing." *Emigrant Mortg. Co., Inc. v. Fitzpatrick*, 945 N.Y.S.2d 697, 700 (2012) (quoting *Scott v. Palermo*, 649 N.Y.S.2d 289, 291 (1996)). By contrast, "[w]here there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect." *Davidovits v. DeJesus Realty Corp.*, 474 N.Y.S.2d 808, 809 (1984); *see David v. £1 Mktg. Serv., Inc.*, 979 N.Y.S.2d 375, 379 (2014) (quoting *Simar Holding Corp. v. GSC*, 928 N.Y.S.2d 592, 595–96 (2011)) (same).

The Court finds that there is insufficient information available as to the circumstances under which Defendants provided Plaintiff with these documents, whether there was a misrepresentation of the documents, or whether there were any indicators of procedural unconscionability, therefore requiring a hearing.

The cases cited by the parties are inapposite. The parties rely on *Maines Paper & Food Serv. Inc. v. Adel*, 681 N.Y.S.2d 390 (1998), where the court weighed the validity of a contract signed by a defendant who had an "alleged 'difficulty' with the English language." *Maines Paper*, 681 N.Y.S.2d at 391; (*see* Defs.' Reply 10; Pl.'s Opp'n 11). The court determined that even accepting as true the defendant's allegations as to misrepresentations, the defendant was precluded from asserting fraudulent inducement, in part because he "candidly admitted at his

12

examination before trial that he made no attempt to read the document before signing it nor did he attempt to have someone else read or explain it to him." *Id.* Similarly, in *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678, 2015 WL 2152703 (S.D.N.Y. May 6, 2015), relied upon by all parties, (*see* Defs.' Reply 10–13; Pl.'s Opp'n 11), the court compelled arbitration based on a "hearing . . . to resolve the issues of forgery . . . , to make credibility findings as to the circumstances under which the [p]laintiffs signed arbitration[] agreements, and to discern what efforts were made by [p]laintiffs, if any, to ascertain the meaning of the documents they were signing." *Victorio*, 2015 WL 2152703, at *1, *3. Likewise, *Molina v. Coca-Cola Enters., Inc*, 08-CV-6370, 2009 WL 1606433 (W.D.N.Y. June 8, 2009), relied upon by Defendants, (*see* Defs.' Reply 10), determined that a non-English speaker's signature on an arbitration agreement was binding, but only after considering declarations and evidence where the plaintiff demonstrated proficiency in English, and the court ruled that the plaintiff had not established that "he took any steps to have the . . . agreement read and made clear to him," *Molina*, 2009 WL 1606433, at *7, and that he "provided no admissible evidence that he cannot read or understand English," *id*. at *6 n.8. The Court has none of this information available to it.

As a result, the Court orders a hearing on the question of the procedural unconscionability of the Arbitration Agreements.

       **iii. Substantive unconscionability**

Defendants argue that the Arbitration Agreements are not substantively unconscionable. (Defs.' Reply 12.)

Plaintiff argues that the Arbitration Agreements are unconscionable and prejudice Plaintiff. (Pls.' Opp'n 8–12.)

"While determinations of unconscionability are ordinarily based on [a] conclusion that

13

both the procedural and substantive components are present, there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Ragone*, 595 F.3d at 122 (quoting *Gillman v. Chase Manhattan Bank N.A.*, 537 N.Y.S.2d 787, 792 (1988)). Courts consider procedural and substantive unconscionability on a "sliding scale," meaning that "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Simar Holding Corp.*, 928 N.Y.S.2d at 595 (quoting *State v. Wolowitz*, 468 N.Y.S. 2d 131, 145 (1983)); *see Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 238 (W.D.N.Y. 2014) ("[P]rocedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." (alteration in original) (quoting *David*, 979 N.Y.S.2d at 378–79)).

Because procedural and substantive unconscionability operate on a sliding scale, the Court defers ruling on substantive unconscionability pending an evidentiary hearing, so that both procedural and substantive unconscionability can be evaluated together. *See, e.g.*, *I.C. ex rel Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 212 (S.D.N.Y. 2015) (deferring ruling on unconscionability because plaintiff alleged enough facts to warrant an evidentiary hearing regarding the contract formation process).

**III. Conclusion**

For the foregoing reasons, the Court orders an evidentiary hearing to determine whether the Arbitration Agreements are procedurally and/or substantively unconscionable.

Dated: November 29, 2021
      Brooklyn, New York

                              SO ORDERED:

                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge